# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DAYS INNS WORLDWIDE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 2960 |
| | ) | |
| | ) | |
| LINCOLN PARK HOTELS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Days Inns Worldwide, Inc.'s ("DIW") motion for summary judgment and on Defendant Lincoln Park Hotels, Inc.'s ("LPH") and Defendant Richard Erlich's ("Erlich") motion for summary judgment on Counts Thirteen and Fifteen. For the reasons stated below, we grant DIW's motion for summary judgment on all counts except for Count Eight, which is denied as moot. We also deny LPH's and Erlich's motion for summary judgment in its entirety.

## BACKGROUND

DIW alleges that it owns a proprietary interest in certain marks ("Days Inn Marks") and that on December 27, 1994, it entered into a licensing agreement ("Agreement") with LPH under which LPH was authorized to operate a hotel ("Hotel") using the Days Inn Marks. As part of the deal, Erlich, the sole shareholder of LPH, also allegedly entered into an agreement with DIW under which he agreed to be the contractual guarantor of LPH's obligations ("Guaranty Agreement"). (Erlich Dep. 25).

According to DIW, LPH failed to honor its obligations under the Agreement to obtain a certain amount of insurance and to name DIW as an additional insured. DIW contends that Erlich purposely failed to obtain proper insurance because he was planning to sell the Hotel. Erlich also allegedly furnished DIW with a falsified certificate of insurance. In June 2004, a guest at the Hotel was seriously injured when she fell down a laundry chute at the Hotel and the guest brought a tort action against LPH and DIW ("Guest Action"). DIW contends that under the terms of the Agreement LPH was also obligated to indemnify and defend DIW in the Guest Action and that LPH has done neither.

In late 2005 LPH sold the Hotel to Defendant Gold Coast Investors ("GCI") without obtaining DIW's consent. DIW contends that the sale violated several

provisions of the Agreement and DIW claims that it terminated the Agreement upon learning of the sale. Despite the termination of the Agreement, GCI continued to operate the Hotel using the Days Inn Marks. DIW also alleges that LPH has failed to make certain payments required under the Agreement.

DIW brought the instant action and includes in the complaint trademark infringement claims alleging violations of 15 U.S.C. § 1114(1)(a) and 15 U.S.C. § 1125(a) (Counts One and Two), a trademark dilution claim based upon a violation of 15 U.S.C. § 1125(c), (Count Three), an Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/1 *et seq.*, claim (Count Four), an Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 *et seq.*, claim (Count Five), a common law unfair competition claim (Count Six), an accounting claim (Count Seven), an unjust enrichment claim (Count Eight), a breach of contract claim based upon a breach of the post-termination obligations (Count Nine), a breach of contract claim based upon a breach of the obligation to pay recurring fees (Count Ten), a breach of contract claim for liquidated damages (Count Eleven), an alternative breach of contract claim for expectancy damages (Count Twelve), a breach of contract claim based upon a breach of the obligations to indemnify and defend DIW (Count Thirteen), a breach of contract claim based upon a breach of the insurance obligations (Count Fourteen), and a breach of guaranty

claim against Erlich (Count Fifteen). The prior judge in this case entered an agreed injunction order prohibiting GCI from using the Days Inn Marks. DIW now moves for summary judgment on all Counts and LPH and Erlich move for summary judgment on the indemnification claims in Count Thirteen and in Count Fifteen.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Trademark Claims and Related State Law Claims (Counts One Through Six)

DIW argues that it is entitled to summary judgment on the trademark infringement claims, IDTPA claims, Consumer Fraud Act claims, and common law unfair competition claims. Defendants do not challenge the sufficiency of evidence on any of the elements of the above listed claims. Neither do any of the Defendants offer any arguments to support a denial of summary judgment on the trademark claims and related state law claims brought against LPH, Erlich, and GCI. The only

argument offered by Defendants in defense of the claims is that LPH and Erlich should be excused from liability because after they sold the Hotel to GCI, they lost control over the Days Inn Marks that were misused by GCI. Thus, Defendants' only argument attempts to shift all blame from LPH and Erlich to GCI.

A. Infringement Claims and Related State Law Claims

DIW includes in its complaint trademark infringement claims based upon violations of 15 U.S.C. § 1114(a)(1) (Count One) and 15 U.S.C. § 1125(a) (Count Two). The IDTPA claims (Count Four), Consumer Fraud Act claims (Count Five), and common law unfair competition claims (Count Six) are evaluated under the same analysis as the trademark infringement claims. *Trans Union LLC v. Credit Research, Inc.*, 142 F.Supp.2d 1029, 1038 (N.D. Ill. 2001)(stating that unfair competition claims brought under Illinois law and IDTPA claims are reviewed under the same analysis that is employed for a Lanham Act trademark infringement claim); *D 56, Inc. v. Berry's Inc.*, 955 F.Supp. 908, 920 (N.D. Ill. 1997)(stating that "[u]nder Illinois law, claims under the ICFDBPA and the IDTPA are to be resolved according to principles set forth under the Lanham Act"). For a trademark infringement claim, a plaintiff is required to establish that: (1) "his mark is entitled to protection," and (2) "there is a likelihood of confusion between [the plaintiff's] mark and [the

defendant's] mark." *Sullivan v. CBS Corp.*, 385 F.3d 772, 775-76 (7th Cir. 2004).

In the instant action, DIW has referred to evidence showing that the Days Inn Marks are entitled to protection. Defendants have also admitted this point, pursuant to Local Rule 56.1, and have not contested this point in the answer to DIW's motion for summary judgment. (LPH R DIW SF Par. 10-16); (GCI R DIW SF Par. 10-16). In regards to the likelihood of confusion determination, a court should consider factors such as: "(1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff." *Sullivan*, 385 F.3d at 776. In the instant action, Defendants have not contested DIW's position that there is sufficient evidence to show a likelihood of confusion. Defendants have also made various admissions, pursuant to Local Rule 56.1, that show that there is a likelihood of confusion.

DIW asserts in Paragraph 38 of its statement of material facts ("Paragraph 38") that, among other things, GCI did not have authorization to use the Days Inn Marks and that GCI used the Days Inn Marks in the operation of the Hotel after the sale of the Hotel by LPH to GCI. (GCI R DIW SF Par. 38). GCI failed to file any response to Paragraph 38, and thus, pursuant to Local Rule 56.1, the facts contained

therein are deemed to be undisputed. LPH and Erlich also failed to dispute the facts contained in Paragraph 38. (LPH R DIW SF Par. 38). Defendants acknowledge that not only were the marks being used by GCI similar to the Days Inn Marks, the marks were the same that LPH was licensed to use. (GCI R DIW SF Par. 38); (LPH R DIW SF Par. 38). Defendants also acknowledge that GCI used the marks in operating the Hotel and thus used the marks in the same manner as DIW's franchises used the marks. (GCI R DIW SF Par. 13, 38); (LPH R DIW SF Par. 13, 38). Defendants have also acknowledged that DIW's mark is a strong mark. (LPH R DIW SF Par. 10-16); (GCI R DIW SF Par. 10-16). Finally, Defendants admit that GCI used the Days Inns Marks without the authorization of DIW. (GCI R DIW SF Par. 38); (LPH R DIW SF Par. 38). Thus, no reasonable trier of fact could conclude other than that there was a likelihood of confusion. DIW has pointed to sufficient evidence to find in its favor as a matter of law on the infringement claims and related state law claims in Counts One, Two, Four, Five, and Six, and Defendants have failed to point to any evidence to support a ruling in their favor on those claims.

### B. Trademark Dilution Claim

DIW includes in its complaint trademark dilution claims based upon violations of 15 U.S.C. § 1125(c) (Count Three). To prevail on a trademark dilution claim a

plaintiff must establish: "(1) that the mark is famous; (2) that [the defendant] adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce."  *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 811 (7th Cir. 2002)(stating that "dilution differs from trademark infringement; it does not require a showing of consumer confusion as to source").  In the instant action, Defendants do not dispute that the Days Inn Marks are well established, widely recognized, and would be considered famous marks.   (GCI R DIW SF Par. 10-16); (LPH R DIW SF Par. 10-16). Defendants also admit that GCI used the Days Inn Marks without authorization after the marks became famous.  (GCI R DIW SF Par. 10-16, 38); ( LPH R DIW SF Par. 10-16, 38).  Neither do Defendants dispute that GCI diluted the Days Inn Marks or that GCI's use of the marks was commercial and in commerce.  No reasonable trier of fact could find in Defendants' favor on the dilution claims.  Thus, DIW has pointed to sufficient evidence to find in its favor as a matter of law on the trademark dilution claims in Count Three, and Defendants have failed to point to any evidence to support a ruling in their favor on those claims.

C.  Relinquishment of Control Argument

Defendants argue that LPH and Erlich cannot be liable for unauthorized use of

the Days Inn Marks because when DIW terminated the Agreement, LPH and Erlich relinquished their control over the Hotel to GCI.  DIW responds by arguing that LPH and Erlich are liable for contributory infringement.  A party can be "held responsible for their infringing activities" if the party "intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement. . . ."  *Inwood Labs., Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 854 (1982).  A party can be held liable for contributory infringement if the party had "[w]illful blindness" to the trademark infringement, which is determined by assessing "what a reasonably prudent person would understand. . . ."  *Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1148-49 (7th Cir. 1992)(stating "it does not impose any duty to seek out and prevent violations").

1.  Contributory Liability for Actions and Inaction at Time of Sale

Although LPH and Erlich did not have an opportunity after the sale of the Hotel to stop the continued infringement as the defendant in *Hard Rock Cafe* did, *id.*, LPH and Erlich could still be found liable for contributory infringement based upon their conduct and inaction at the time of the sale.  The facts in this case clearly show that LPH and Erlich entered into the sale with their eyes open as to GCI's intentions

and yet took no action to prevent GCI from infringing upon DIW's registered marks. Defendants make no effort to contradict DIW's contention that Defendants entered into the sale aware that the ultimate outcome of the sale was that GCI, as the owner and operator of the Hotel, would be using the Days Inn Marks.

DIW states in Paragraph 37 ("Paragraph 37") of its statement of material facts that "[a]t the time that LPH sold the [Hotel] to GCI, LPH and Erlich 'definitely' knew that GCI intended to leave the Days Inn Marks up at the [Hotel] for 'a while,' and to continue operating the [Hotel] as a Days Inn hotel for as long as 'a year.'" (DIW SF Par. 37). DIW also states in Paragraph 37 that "LPH and Erlich neither removed the Days Inn Marks themselves before selling the [Hotel], as the contract required, nor mandated that GCI remove them." (DIW SF Par. 37). GCI does not respond at all to Paragraph 37. (GCI R DIW SF Par. 37). LPH and Erlich respond to Paragraph 37 by stating: "LPH and Erlich admit the requirements of the Licence Agreement." (LPH R DIW SF Par. 37).

LPH's and Erlich's response to Paragraph 37 is improper under Local Rule 56.1 because it is not followed by a citation to evidence to support the response. L.R. 56.1; *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003). In addition, the response is improper because it avoids responding to any other facts in the paragraph other than the one fact indicating that LPH and Erlich were required to

remove the marks under the terms of the Agreement.  *See also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1).  Thus, the facts contained in Paragraph 37 are deemed to be undisputed pursuant to Local Rule 56.1.  LPH and Erlich admit that they knew that they were handing over the Hotel with all of its Days Inn Marks to GCI, a party that intended to use the marks without authorization in the continued operation of the Hotel.  Such admitted facts regarding LPH's and Erlich's knowledge of GCI's intentions far surpass the "[w]illful blindness" standard mentioned in *Hard Rock Cafe*.  955 F.2d at 1148.  Erlich also admitted at his deposition that he knew that GCI intended to "leave the signs up and stay operating as a Days Inn."  (Erlich Dep. 69).   Thus, based upon the undisputed facts, LPH and Erlich knowingly presented GCI with a pre-packaged, ready-made infringement opportunity and received compensation pursuant to the purchase agreement for providing that opportunity to GCI.  (DIW SF Purch. Ag. Ex. 6).

### 2.  Negotiations For Lawful Transfer of Franchise

Erlich stated during his deposition that he had discussed lawfully transferring the franchise to GCI, but Erlich admitted that it never progressed to the point that he

contacted DIW or obtained authority from DIW to transfer the franchise. (Erlich

Dep. 49-51, 53). Erlich also indicated that he thought GCI had discussed transferring

the franchise with DIW, but nothing came from the negotiations, and Erlich never

saw any writings indicating that DIW authorized a transfer of the franchise to GCI.

(Erlich Dep. 53, 69-70). Defendants admit pursuant to Local Rule 56.1 that GCI

lacked authorization from DIW to use the Days Inn Marks and Defendants have

failed to present any evidence which would enable a reasonable trier of fact to

conclude that GCI had obtained such authorization. (GCI R DIW SF Par. 38); (LPH

R DIW SF Par. 38).


### 3. Supreme Court and Seventh Circuit Contributory Infringement Precedent

The Seventh Circuit has addressed the issue of contributory infringement in

*Hard Rock Cafe*, 955 F.2d at 1148. Although, certain general principles regarding

contributory infringement expressed in *Hard Rock Cafe* are applicable to the instant

action, the facts in that case are somewhat distinguishable from the instant action. In

*Hard Rock Cafe*, one of the defendants was an operator of a flea market that allowed

a vendor to sell merchandise bearing the plaintiff's trademarks. *Id.* at 1145. The

district court concluded at the conclusion of a bench trial that the flea market

operator was liable for contributory infringement. *Id.* at 1145-49. The Seventh

Circuit reversed the district court and remanded the case, finding that there was not sufficient evidence regarding the state of mind and knowledge of the flea market operator. *Id.* at 1149.

In remanding the case, the Seventh Circuit focused on whether the flea market operator knowingly allowed the vendor to infringe while the vendor was selling products on the property, which was under the control of the flea market operator. *Id.* The Seventh Circuit analyzed whether there was sufficient evidence that indicated that the flea market operator knew of the infringement and failed to take action to stop the infringement on its property. *Id.* The instant action is thus distinguishable from *Hard Rock Cafe* in that LPH did not allow GCI to use the Hotel property pursuant to some lease or license. LPH did not retain a legal right to control the usage of the property. Instead, LPH sold the Hotel to GCI and permanently relinquished all of its control over the Hotel property, and, in doing so, LPH lost any legal recourse against GCI to prevent further infringement. LPH also lacked any legal right to assert the proprietary rights of DIW in its marks. Once the Hotel was sold, only DIW possessed a legal recourse. Thus, the Seventh Circuit's analysis in *Hard Rock Cafe* concerning a contributing infringer's failure to halt ongoing infringement by a primary infringer is not applicable in the instant action.

Although the facts in *Hard Rock Cafe* differ from those in the instant action,

the Seventh Circuit, in applying the concept of contributory infringement, looked to *Inwood Labs., Inc.*, 456 U.S. 844, which does have facts that are analogous to the facts in the instant action. 955 F.2d at 1148. In *Inwood*, the Court addressed whether a defendant manufacturer of a generic drug could be liable for contributory infringement. *Id.* at 852-55. In that case, the defendant manufacturer had made a generic drug and copied the appearance of the plaintiff competitor's pills. *Id.* at 847. Pharmacists that received the defendant manufacturer's pills were mislabeling the containers with the registered trademark of the plaintiff competitor. *Id.* at 850. The Court recognized that the defendant manufacturer could be liable under the concept of contributory infringement, stating that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another" and that "[e]ven if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances." *Id.* at 853-54. The Court stated that "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *Id.* at 854.

The application of the concept of contributory infringement by the Court in

*Inwood* to the facts before it is instructive in applying the concept of contributory

infringement to the facts before us.  In *Inwood*, the Court stated that liability can

reach beyond those that actually mislabeled the pill containers, and similarly in the

instant action, liability for infringement can reach beyond GCI, which actually

operated the Hotel with the Days Inn Marks after the Agreement was terminated.

Also, in *Inwood*, the defendant manufacturer lost control over its pills when they

were sold to pharmacists, and thus the defendant manufacturer did not have control

over the pharmacists when they placed the pills in their own mislabeled containers.

*Id.* at 848-49.  Likewise, LPH and Erlich lost control over the Hotel and its displayed

Days Inn Marks when the Hotel was sold to GCI.  In *Inwood*, the Court indicated

that the defendant manufacturer's relinquishment of direct control over the offending

product did not excuse the defendant from infringement liability, and likewise, the

mere fact that LPH and Erlich may have relinquished control over the Hotel does not

excuse them from liability.

In addition, in *Inwood*, the defendant manufacturer supplied the pills to the

pharmacists for compensation, and the Court indicated that a key inquiry was

whether the manufacturer "continued to supply [the pills] to pharmacists whom the

[manufacturer] knew were mislabeling generic drugs."  *Id.* at 855.  Similarly, in the

instant action, which involves a single transaction rather than a series of sales as in

*Inwood,* LPH and Erlich supplied GCI with the Hotel and its Days Inn Marks for compensation. Thus, as in *Inwood*, LPH and Erlich can be liable for contributory infringement if they supplied the Hotel and Days Inn Marks to GCI and knew that GCI was going to use the Hotel and Days Inn Marks to infringe upon DIW's trademarks. As indicated above, based upon Defendants' admissions made pursuant to Local Rule 56.1, LPH and Erlich clearly possessed such knowledge.

Our application of the concept of contributory liability is consistent with the Seventh Circuit's warning that defendants cannot avoid liability by closing their eyes to infringement by parties that they deal with and by making themselves "willfully blind" to such infringement. *Hard Rock Cafe*, 955 F.2d at 1148 We also note that our application of the concept of contributory infringement is consistent with the Ninth Circuit's position in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), which is cited by DIW, and which summarized the concept as "impos[ing] liability where one person knowingly contributes to the infringing conduct of another." *Id.* at 264. In the instant action, based upon the undisputed facts, LPH and Erlich unquestionably knowingly contributed to GCI's infringement of the Days Inn Marks. Therefore, based on the above, no reasonable trier of fact could conclude other than that LPH and Erlich are liable for contributory infringement and we grant DIW's motion for summary judgment on the trademark

claims and related state law claims.  (Counts One through Six).


## II.  Breach of Contract Claims (Counts Nine, Ten, Thirteen, Fourteen, and Fifteen)

DIW moves for summary judgment on the breach of contract claims.  We note at the outset that neither LPH nor Erlich have contested that they breached certain obligations under the Agreement.  Erlich, the sole shareholder of LPH and the guarantor of LPH, admitted during his deposition that he owed DIW liquidated damages for the breaches of LPH's obligations under the Agreement in the amount of $193,000.00.  (Erlich Dep. 47-49).  Defendants also admit such liability pursuant to Local Rule 56.1.  (GCI R DIW SF Par. 32); (LPH R DIW SF Par. 32).  Erlich also admitted during his deposition that when he sold the Hotel, he anticipated being held liable by DIW for breaching the Agreement and included terms in the purchase agreement with GCI that required GCI to help pay for the liquidated damages. (Erlich Dep. 58-59).


### A.  Breach of Transfer Provision in Agreement and Termination of Agreement

Defendants admit, pursuant to Local Rule 56.1, that under Section 17(a) of the Agreement, LPH was barred from transferring or conveying its interest in the Hotel to a third party without prior written consent of DIW.  (GCI R DIW SF Par. 21-23);

(LPH R DIW SF Par. 21-23). Defendants also admit that LPH sold the Hotel to GCI without DIW's consent. (GCI R DIW SF Par. 25-26); (R LPH DIW SF Par. 25-26). Erlich admitted at his deposition that he never even gave DIW notice of the sale. (Erlich Dep. 59, 66). Defendants acknowledge that DIW had the right to terminate the Agreement for reasons including a breach of Section 17(a) of the Agreement, that DIW informed LPH and Erlich that the Agreement was terminated by a letter dated February 10, 2006, and that LPH and Erlich understood at that time that the Agreement had been terminated. (GCI R DIW SF Par. 21, 27, 32); (LPH R DIW SF Par. 21, 27, 32). Defendants offer no legal justification for their admitted blatant disregard for Section 17(a) of the Agreement. Thus, the undisputed evidence shows that LPH breached the Agreement by selling the Hotel to GCI and DIW properly terminated the Agreement in February 2006.

### B. Breach of Post-Termination Obligations (Count Nine)

DIW argues that it is entitled to summary judgment on the breach of contract claim based upon the breach of LPH's post-termination obligations under the Agreement. Defendants admit, pursuant to Local Rule 56.1, that under Section 21(a) of the Agreement, when the Agreement was terminated, LPH was obligated "to discontinue immediately any further use of the Days Inn Marks, and to de-identify

the [Hotel] by removing all items bearing the Days Inn Marks." (GCI R DIW SF Par. 36); (LPH R DIW SF Par. 36). Defendants admit that LPH and Erlich failed to honor either obligation and admit that GCI did not remove the last of the signs bearing the Days Inn Marks until the agreed injunction order was entered in this case. (GCI R DIW SF Par. 36, 39); (LPH R DIW SF Par. 36, 39). We note that GCI mentioned in its response to DIW's motion for summary judgment that GCI denies that it kept the Days Inn Marks up until June 2006, but GCI provides no citation to support the denial and therefore, the facts presented by DIW are deemed to be undisputed. *Dent*, 2003 WL 22025008, at *1 n.1. Therefore, based upon the undisputed evidence, no reasonable trier of fact could conclude other than that LPH breached its post-termination obligations in Section 21(a) of the Agreement, and we grant DIW's motion for summary judgment on the breach of contract claims based upon those breaches of obligations (Count Nine).

## C.  Breach of Obligation to Pay Recurring Fees (Count Ten)

DIW argues that it is entitled to summary judgment on the breach of contract claim that is based upon the failure of LPH to pay recurring fees. Defendants admit, pursuant to Local Rule 56.1, that under Sections 8 and 29(a) of the Agreement, LPH was required to remit recurring fees to DIW. (GCI R DIW SF Par. 31); (LPH R

DIW SF Par. 31). Defendants have not contested DIW's assertion that LPH failed to pay all of the required recurring fees due under the Agreement. Therefore, we grant DIW's motion for summary judgment on the breach of contract claim based upon the breach of the obligation to pay recurring fees (Count Ten).

### D.  Breach of Indemnification and Defense Obligations (Count Thirteen)

DIW seeks summary judgment on the indemnification and duty to defend claims and Defendants have moved for summary judgment on those claims as well. Defendants acknowledge that Section 13(d)(1) of the Agreement provided that LPH was obligated to "indemnify" and "defend" DIW in regards to any "suit . . . relating to or arising out of any transaction, occurrence or service at or in conjunction with the operation of the" Hotel.  (GCI R DIW SF Par. 43); (LPH R DIW SF Par. 43). Defendants also acknowledge that the Guest Action is based upon allegations relating to an occurrence that occurred in operating the Hotel.  (GCI R DIW SF Par. 49); (LPH R DIW SF Par. 49).

### 1.  Indemnification Claims

Defendants argue that DIW is precluded from pursuing the indemnification claims in this action because the Guest Action is still pending in state court.

Defendants cite *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 703 N.E.2d 473 (Ill. App. Ct. 1998), which provides that "a defendant may not bring a separate action for indemnification while the primary lawsuit is pending. . . ." *Id.* at 483 (stating that "a defendant does have a choice of filing a third party complaint against a party who may be liable to indemnify him as part of the original action, or of waiting until the original action is over and filing a separate action for indemnity if he is found liable"). DIW argues that even if it cannot yet recover damages under the indemnity claim, it can obtain a declaratory judgment stating that LPH is obligated to indemnify DIW. The Seventh Circuit has indicated that "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). DIW responds by pointing to *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir. 1992), which indicated that the rule barring declaratory relief in regards to indemnification prior to a determination of liability is not an absolute rule. *Id.* at 680. The Court in *Bankers Trust Co.* also stated that "a request for such relief is addressed to the discretion of the district court." *Id.* at 682. DIW acknowledges that ruling on the indemnity issue at this juncture is a matter within this court's discretion, and DIW argues that ruling on the issue now would serve judicial economy. (DIW Reply 11). We agree. Defendants have not contested any of the material facts relating to the

duty of LPH to indemnify DIW. Defendants admit that Erlich was planning to sell the Hotel early on in the term of the Agreement when he purchased inadequate insurance and furnished DIW with a falsified certificate of insurance. (GCI R DIW SF Par. 48); (LPH R DIW SF 48). Defendants have failed to point to any evidence that would create a genuinely disputed fact in regards to indemnity claims and, therefore, we grant DIW's motion for summary judgment on the indemnity claims and deny LPH's and Erlich's motion for summary judgment on those claims.

## 2. Duty to Defend

The duty to defend on the part of LPH is a separate matter from the obligation to indemnify. In regards to an insurance duty-to-defend case, "the general rule is that an actual controversy exists where an insured alleges that its insurer has a duty to defend him against potential liability in an underlying action" and "[a] duty-to-defend claim is ripe during the pendency of that action." *Molex Inc. v. Wyler*, 334 F.Supp.2d 1083, 1086 (N.D. Ill. 2004)(stating that "[b]ecause the duty to defend question usually does not depend on the outcome of the underlying action, there is no barrier to resolving that question before the underlying litigation is resolved"). Thus, the issue of whether LPH has a duty to defend DIW in the Guest Action is a ripe issue that can be adjudicated at this juncture.

Defendants argue that LPH does not have a duty to defend DIW because DIW refused to accept the counsel chosen by LPH. LPH and Erlich cite *Nandorf, Inc. v. CNA Ins. Companies*, 479 N.E.2d 988 (Ill. App. Ct. 1985), for the proposition that "[t]he general rule under Illinois law is that an [indemnitor] controls the defense of its [indemnitee.]" (LPH Ans. DIW SJ 11). Defendants also point to provisions of the Agreement that indicate that LPH would have control over any defense pursued on behalf of DIW. Defendants fail, however, to provide the complete statement of the law in *Nandorf*. The Court in *Nandorf* also stated that "[w]hen conflicts arise, the Illinois Supreme Court has recognized a 'limited exception' to the general rule that an insurer controls the defense of its insured," and that "[t]he insured is entitled to assume control of his own defense in the underlying action." *Id.* at 991. This exception is based upon a concern that once the insurer and insured become antagonists, the insurer might utilize its right to select counsel to gain an advantage over the insured. *See In re New Era, Inc.*, 135 F.3d 1206, 1211 (7th Cir. 1998)(stating that "[i]t is one thing for the insurer, pursuant to its duty to defend, to pick up the tab for the insured's lawyer; that is fine, . . .[b]ut[,] as the cases we have just cited make clear, the insurer must, unless the insured consents, relinquish all control over the lawyer once insurer and insured turn out to have antagonistic interests"). DIW has submitted an exhibit consisting of a letter DIW sent to the

counsel chosen by LPH in the Guest Action, informing the counsel that DIW intended to obtain separate counsel due to a "conflict of interest . . . between" DIW and LPH. (DIW SF Ex. N). DIW has also filed another exhibit consisting of another letter sent by DIW to the counsel chosen by LPH indicating that DIW believed there was a conflict between DIW and LPH because LPH breached various provisions of the Agreement and DIW had a counterclaim pending against LPH in the Guest Action. (DIW SF Ex. P). Defendants have not contested DIW's assertion that it stands in a position that is adverse to Defendants in both the Guest Action and the instant action. Neither have Defendants shown that they are being harmed by DIW's choice of counsel. Defendants have not, for example, shown that the counsel chosen by DIW for its defense in the Guest Action lacks the necessary expertise to present the defense. Therefore, we grant DIW's motion for summary judgment on the duty-to-defend claim.

### E. Breach of Insurance Obligations (Count Fourteen)

DIW argues that it is entitled to summary judgment on the breach of contract claim based upon the breach of the insurance obligations under the Agreement. Defendants admit, pursuant to Local Rule 56.1, that under Section 13(a) of the Agreement, "LPH was obligated to secure and maintain commercial general liability

insurance for the [Hotel] and to name DIW as an Additional Insured." (GCI R DIW SF Par. 41); (LPH R DIW SF Par. 41). Defendants also admit that under the Agreement, LPH was required to obtain insurance coverage with "combined single limits of not less than Four Million Dollars ($4,000,000) per occurrence." (GCI R DIW SF Par. 41); (LPH R DIW SF Par. 41). Defendants also admit that LPH was obligated to provide DIW with a certificate of insurance indicating that LPH had complied with its insurance obligations under the Agreement. (GCI R DIW SF Par. 42); (LPH R DIW SF Par. 42).

Defendants admit that LPH failed "to maintain commercial general liability insurance to protect DIW" and "failed to obtain coverage that named DIW as an Additional Insured." (GCI R DIW SF Par. 46); (LPH R DIW SF Par. 46). Defendants also admit that LPH failed to obtain insurance in the amount required. (GCI R DIW SF Par. 47); (LPH R DIW SF Par. 47). Erlich also acknowledged during his deposition that he did not obtain sufficient insurance coverage. (Erlich Dep. 37-38). Defendants also admit that Erlich told his insurance agent that "the [H]otel was up for sale and he just wanted to take the $2,000,000 in coverage, and if DIW pushed the issue he could 'ask for higher limits later.'" (GCI R DIW SF Par. 47); (LPH R DIW SF Par. 47). Finally, Defendants admit that LPH and Erlich provided DIW with a falsified certificate of insurance. (GCI R DIW SF Par. 48);

(LPH R DIW SF Par. 48).

DIW asserts in Paragraph 48 of its statement of material facts ("Paragraph 48") that the certificate of insurance provided to DIW "claim[ed] coverage in appropriate amounts, and falsely claim[ed] that DIW . . . [was an] Additional Insured under the . . . policy." (DIW SF Par. 48). GCI does not respond to Paragraph 48. (GCI R DIW SF Par. 48). LPH and Erlich attempt to avoid responding to DIW's assertions that the certificate of insurance contained false information by stating only that "LPH and Erlich admit that LPH provided the Certificate of Liability Insurance dated August 27, 2004." (LPH R DIW SF Par. 48). LPH's and Erlich's response to Paragraph 48 is improper for two reasons. First, LPH and Erlich fail to provide a citation to the record to support their response. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1. Second, LPH and Erlich also fail to respond to the facts in Paragraph 48 concerning false information in the certificate and instead only acknowledge that they provided DIW with a certificate of insurance. *Jankovich*, 2003 WL 260714, at *5. Therefore, Paragraph 48 is deemed to be undisputed pursuant to Local Rule 56.1. Based upon the undisputed facts, LPH breached its insurance obligations under the Agreement and we grant DIW's motion for summary judgment on the breach of contract claim based upon the breach of the insurance obligations under the Agreement (Count Fourteen).

### F.  Breach of Guaranty Agreement (Count Fifteen)

DIW argues that it is entitled to summary judgment on the breach of the Guarantee Agreement claim and Defendants move for summary judgment on the claim as well.  Defendants admit that Erlich entered into the Guaranty Agreement under which, among other things, he would be obligated to "immediately make all payments and/or perform all obligations required under the [Agreement.]"  (GCI R DIW SF Par. 20); (LPH R DIW SF Par. 20).  Defendants have not provided any justification why Erlich should not be held liable in accordance with the terms of the Guaranty Agreement.  Therefore, we grant DIW's motion for summary judgment on the Guaranty Agreement claim (Count Fifteen).

### III.  Unjust Enrichment Claims (Count Eight)

DIW moves for summary judgment on its unjust enrichment claims (Count Eight).  However, since we have granted DIW's motion for summary judgment on all of its breach of contract claims, DIW's unjust enrichment claim is dismissed as moot since DIW has been provided with a recovery on its breach of contract causes of action.  *See ShopLocal LLC v. Cairo, Inc.*, 2006 WL 495942, at *2 (N.D. Ill. 2006)(stating that "[i]f an unjust enrichment claim is predicated on a contract, a plaintiff may not recover for both unjust enrichment and breach of contract").

Therefore, we deny DIW's motion for summary judgment on the unjust enrichment claim and dismiss the claim in Count Eight as moot.


## IV. Damages

DIW moves for summary judgment on the issue of damages. DIW seeks $219,055.00 for liquidated damages plus interest, $1,135.00 for addendum liquidated damages plus interest, $215,000.04 for damages under the trademark claims and related state law claims, and $17,141.49 for unpaid recurring fees and interest.


### A. Liquidated Damages (Count Eleven)

DIW argues that it is entitled to summary judgment on the issue of liquidated damages. Defendants concede that the Agreement contained a liquidated damages provision for breaches of the Agreement and that LPH and Erlich owe $193,000.00 in liquidated damages. (GCI R DIW SF Par. 31, 68); (LPH R DIW SF Par. 31, 68). Erlich himself acknowledged at his deposition that he "definitely" owes DIW $193,000.00 in liquidated damages. (Erlich Dep. 47-49). DIW also contends that Erlich owes $26,055.00 in interest. (DIW SF Par. 68). LPH and Erlich object to the rate of interest, but fail to show that the rate is improper. *See Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.*, 2005 WL 3164205, at *10 (D. N.J. 2005)(stating

that "[p]rejudgment interest may be determined by contract"). Therefore, we grant DIW's motion for summary judgment on the liquidated damages claim and award DIW the amount of $219,055.00.

LPH and Erlich also concede that they owe $1,000.00 for addendum liquidated damages. (GCI R DIW SF Par. 72); (LPH R DIW SF Par. 72). LPH and Erlich contest the award of $135.00 in interest for addendum liquidated damages, but they fail to provide a citation to the record to support the response to DIW's statement of material facts and, thus the amount of interest is deemed to be undisputed and is appropriate. Therefore, we also award DIW $1,135.00 for addendum liquidated damages plus interest.

## B. Remaining Damages Issues

DIW also moves for summary judgment on the damages award for the trademark claims and related claims. DIW contends that the evidence shows that Defendants willfully violated the Lanham Act, making treble damages appropriate. DIW seeks $215,000.04 for damages under the trademark claims and related claims. DIW also seeks $17,099.04 for unpaid recurring fees and interest. We agree that, based upon the admissions made by Defendants, Defendants willfully violated the Lanham Act. In addition, Defendants have not presented any objections as to the

requested damages. There are no genuinely disputed facts concerning such damages. Therefore, we award DIW $215,000.04 for damages under the trademark claims and related state law claims and $17,099.04 for unpaid recurring fees and interest. DIW also requests reasonable attorneys' fees and Defendants have not disputed that attorneys' fees are owed. We find that a reasonable amount for attorneys' fees is one third of the total damages award and, therefore, award $150,763.03 in attorneys' fees.

**CONCLUSION**

Based on the foregoing analysis, we grant DIW's motion for summary judgment on Counts One, Two, Three, Four, Five, Six, Nine, Thirteen, Fourteen, and Fifteen. We deny DIW's motion for summary judgment on the unjust enrichment

claim and dismiss the claim in Count Eight as moot. We also grant DIW's motion for summary judgment in regards to liquidated damages plus interest and addendum liquidated damages plus interest. We also grant DIW's motion for summary judgment in regards to damages under the trademark claims and related state law claims and damages for unpaid recurring fees and interest.


_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated: February 22, 2007